IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO. 5:20-CT-3372-M

EDWARD A. WRIGHT,            )
                             )
        Plaintiff,           )
                             )
v.                           )           ORDER
                             )
DONNIE R. RAYNOR, et al.,    )
                             )
        Defendants.          )

This matter is before the court on defendants' motion for summary judgment [D.E. 55]. Plaintiff responded in opposition. For the reasons stated below, defendants' motion is granted.

PROCEDURAL HISTORY

On December 16, 2020, plaintiff, a state pretrial detainee proceeding pro se, filed the instant action pursuant to 42 U.S.C. § 1983 alleging defendants violated his Fifth, Sixth, and Fourteenth Amendment rights under the United States Constitution by improperly conducting plaintiff's disciplinary hearing. (Compl. [D.E. 1] at 5–7). On November 23, 2021, the court conducted a frivolity review of the complaint and allowed the action to proceed as to defendants Donnie R. Raynor ("Raynor"), Christine E. Mangum ("Mangum"), and Monica Bond ("Bond"). (Nov. 23, 2021, Ord. [D.E. 10] at 4).

On May 1, 2023, defendants filed their instant motion for summary judgment relying on a memorandum in support, statement of material facts, and appendix of exhibits thereto, which includes: (1) declaration of counsel; (2) plaintiff's safekeeper court order; (3) plaintiff's incarceration summary; (4) excerpts from the North Carolina Department of Public Safety

("NCDPS") Policy Manual; (5) declarations of defendants Bond, Raynor, and Mangum; (6) disciplinary hearing record dated May 16, 2020; and (7) plaintiff's disciplinary history. (Mot. Summ. J. [D.E. 55]; Def. Mem. [D.E. 56]; Def. Statement of Material Facts [D.E. 57]; Def. App. [D.E. 58]). That same day, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), plaintiff was provided notice of the motion for summary judgment and instructions for responding. (Roseboro Letter [D.E. 59]).

On May 17, 2023, plaintiff filed a response in opposition relying on an opposing statement of material facts, appendix re-listing defendants' exhibits, and plaintiff's declaration. (Pl. Resp. [D.E. 60]; Pl.'s Statement of Material Facts [D.E. 60-1]; Pl. App. [D.E. 60-2]; Pl. Decl. [D.E. 60-3]).

## STATEMENT OF THE FACTS

The facts of this case are largely undisputed and, viewed in the light most favorable to plaintiff, are summarized as follows. Plaintiff is a pretrial detainee held as a safekeeper with the North Carolina Department of Adult Correction ("NCDAC") at Central Prison. (Pl.'s Decl. [D.E. 60-3] ¶ 2; Def. Ex. 1, A [D.E. 58-2]). A safekeeper is

> [a] prisoner held in any county jail who: poses a serious escape risk; exhibits violently aggressive behavior that cannot be contained and warrants a higher level of supervision; needs to be protected from other prisoners and the county jail cannot provide such protection; . . . otherwise poses an imminent danger to the staff of the county jail facility or to other prisoners in the facility or to other prisoners in the facility; or requires medical or mental health treatment.

(Def. Ex. 1, C [D.E. 58-4] at 1); see also N.C Gen Stat. § 162-39(a)–(b). Although safekeepers are kept separate from other prisoners, safekeepers are "expected to follow the rules and regulations common to all offenders. The disciplinary procedures used for offenders are applicable

2

to safekeepers. Safekeepers are subject to the same disciplinary sanctions as general population offenders, except the loss of sentence reduction credits." (Def. Ex. 1, C [D.E. 58-4] at 4).

The NCDPS policy manual provides disciplinary procedures for inmates charged with infractions. (Def. Ex. 1, D [D.E. 58-5] § .0201). Counseling may be used as a first step to address an infraction, but should counseling be ineffective or inappropriate, a written report must be presented to the facility head. (Id. § .0205(a)(2)–(3)). An inmate must be provided the following within 24 hours of the charge: the nature of the charge; his right to provide a statement, request witness, or investigation; and an opportunity to be heard. (Id. § .0205(c)(1)). Also within 24 hours of receiving the report, an investigator is assigned who submits results of the investigation to the facility head. (Id. § .0205(b)(2)). The facility head must decide whether to conduct a hearing within 72 hours. (Id. § .0205(b)(4)). Any hearing must be held within seven days, or within a period of extension requested by the disciplinary hearing officer ("DHO"). (Id. § .0205(b)(5)). An inmate as 15 days to appeal a guilty decision. (Id. § .0205(b)(6)).

Plaintiff's claims arise out of an infraction for the following conduct on May 16, 2020:

> Officer Urieta was in the process of handing a tray to [plaintiff]. Officer Urieta observed that [plaintiff] did not have on his face mask. Officer Urieta gave [plaintiff] two directives to put his mask on. Officer Urieta gave [plaintiff] another directive to put his mask on. He complied. [Plaintiff] stepped into the sallyport and reached for his tray. [Plaintiff] pulled down his mask and stated "I don't have to wear no fucking mask." Officer Urieta[] stated to [plaintiff] that if he did not put his mask on that he would not receive a tray. Officer Urieta gave [plaintiff] a directive to step away from the foodcart and back on the cell so that he could feed the rest of the offenders. [Plaintiff] refused 3 directives given to him by Officer Urieta and obstruct[ed] the officer from continuing his duties. [Plaintiff] continued to state that he didn't need to wear a mask. Officer Urieta ordered [plaintiff] to submit to handcuffs. He refused the directives. Officer Urieta attempted to put restraints on [plaintiff] but he backed away stating that he was not going to cuff up. Officer Urieta gave [plaintiff] another directive to submit to being placed in handcuffs. He did not comply. Officer Urieta was attempting to remove [plaintiff]

3

> from the cell block but [plaintiff] continued to resist. Officer Urieta placed [plaintiff] against the wall and applied the restraints. Officer Urieta gave [plaintiff] a directive to walk off the block. He refused. Officer Urieta applied the bent wrist come along. [Plaintiff] was escorted off the block.

(Def. Ex. 2, A [D.E. 58-7] at 4). As a result, plaintiff was charged with interfering with staff decision, performing a high-risk act, and disobeying an order. (Id. at 4–7). Plaintiff was informed of the charges, his right to a hearing, and abilities to call witnesses and present a statement. (Id. 4–8, 12–14, 6).

After a continuance, a disciplinary hearing was held on June 18, 2020, before DHO Raynor. (Pl. Decl. [D.E. 60-3] ¶ 3; Def. Ex. 3 [D.E. 58-9] ¶ 3). Beginning the hearing, Raynor read plaintiff the charging summary and offenses, and asked how plaintiff wished to plea. (Pl. Decl. [D.E. 60-3] ¶ 3; Def. Ex. 3 [D.E. 58-9] ¶ 3). Plaintiff refused to enter a plea and stated that such action voided the hearing. (Pl. Decl. [D.E. 60-3] ¶ 3; Def. Ex. 3 [D.E. 58-9] ¶ 3; see also Def. Ex. 4 [D.E. 58-10] ¶ 3). Plaintiff further explained that, as DHO, Raynor was required to obtain a plea of guilty or not guilty, and by refusing to plead, the process was null and void. (Pl. Decl. [D.E. 60-3] ¶ 3; Def. Ex. 3 [D.E. 58-9] ¶ 3). Raynor told plaintiff his understanding was wrong, and Raynor would enter a "no plea" on plaintiff's behalf. (Pl. Decl. [D.E. 60-3] ¶ 3; Def. Ex. 3 [D.E. 58-9] ¶ 3). However, the hearing would proceed. (Pl. Decl. [D.E. 60-3] ¶ 3; Def. Ex. 3 [D.E. 58-9] ¶ 3). Plaintiff disagreed and continued to argue he did not consent to being subject to the NCDPS policies and procedures. (Pl. Decl. [D.E. 60-3] ¶ 3; Def. Ex. 3 [D.E. 58-9] ¶ 3). Raynor informed plaintiff he would be removed from the hearing, and the hearing would be conducted in his absence if he continued to argue. (Pl. Decl. [D.E. 60-3] ¶ 3; Def. Ex. 3 [D.E. 58-9] ¶ 3; Def. Ex. 4 [D.E. 58-10]

¶ 3). The hearing proceeded, and plaintiff was found guilty of disobeying an order.[1] (Def. Ex. 3 [D.E. 58-9] ¶ 3; Def. Ex. 4 [D.E. 58-10] ¶ 3). As punishment, plaintiff was placed in restrictive housing for 20 days, had 40 hours of extra duty, and lost canteen and visitation privileges for 60 days. (Def. Ex. 2, A [D.E. 58-7] at 5). Plaintiff appealed the decision, and the decision was upheld. (Def. Ex. 2 [D.E. 58-6] ¶ 3; Def. Ex. 3 [D.E. 58-9] ¶ 3).

COURT'S DISCUSSION

A.   Legal Standard

Summary judgment is appropriate when, after reviewing the record as a whole, the court determines that no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). For cross-motions for summary judgment, the court "consider[s] each motion separately on its own merits to determine whether [any] of the parties deserves judgment as a matter of law." Defs. of Wildlife v. N.C. Dep't of Transp., 762 F.3d 374, 392 (4th Cir. 2014). The party seeking summary judgment must initially demonstrate the absence of a genuine issue of material fact or the absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, see Anderson, 477 U.S. at 247–48, but "must come forward with specific facts showing that there is a genuine issue for trial," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis and quotation omitted). To determine whether a genuine issue of material fact exists for trial, the court views

---

[1]   It is disputed whether plaintiff pleaded not guilty or entered a no plea. Defendants assert plaintiff changed his plea to not guilty. (Def. Ex. 3 [D.E. 58-9] ¶ 3; Def. Ex. 4 [D.E. 58-10] ¶ 3). Plaintiff maintains he refused to enter a plea, and a not guilty plea was entered on his behalf. (Pl. Decl. [D.E. 60-3] ¶ 3).

5

the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. See Scott v. Harris, 550 U.S. 372, 378 (2007).

B. Analysis

As noted, plaintiff alleges defendants violated his Fifth, Sixth, and Fourteenth Amendment rights of "due process, trial by jury, equal protection, and separation of powers." (Compl. (D.E. 1) at 5–7). Specifically, plaintiff argues that, as a safekeeper, he does not fall under the purview of the NCDPS policies and procedures unless he consents. (Pl. Mem. [D.E. 60] at 6). As a result, he maintains the disciplinary hearing violated his constitutional rights. Under the Fourteenth Amendment's Due Process Clause, a pretrial detainee has a right to be free from punishment and protects detainees from punishment "prior to an adjudication of guilt in accordance with due process of law." Williamson v. Stirling, 912 F.3d 154, 173 (4th Cir. 2018) (citing Bell v. Wolfish, 441 U.S. 520, 535 & n.16 (1979))(internal quotation marks omitted). Pretrial detainees "possess at least the same rights as convicted prisoners." Id. at 176. Thus, prior to punishment, a pretrial detainee is entitled to: (1) advance written notice of the charges, (2) a hearing, (3) the right to call witnesses and present evidence when it is not inconsistent with institutional safety and concerns, and (4) a written decision. See Wolff v. McDonnell, 418 U.S. 539, 563–64 (1974). Such disciplinary findings also must be made by an impartial adjudicator, see id. at 570–71, and be supported by "some evidence in the record," see Superintendent, Mass. Corr. Inst. Walpole v. Hill, 472 U.S. 445, 454–55 (1985). "As long as the record is 'not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary,' courts need no grant . . . relief on this ground." Tyler v. Hooks, 945 F.3d 159, 170 (4th Cir. 2019) (quoting Hill, 472 U.S. at 457).

Here, plaintiff does not contest that he received advanced written notice of the charges, a hearing, the right to call witnesses and present evidence, and a written decision. Plaintiff also does not maintain that there was insufficient evidence for the guilty decision. Plaintiff's main argument is he is not subject to the NCDPS policies and procedures without his consent because he is a safekeeper pretrial detainee. (Pl. Mem. [D.E. 60] at 1, 5–6). However, other than conclusory statements in his declaration, plaintiff presents no verified evidence supporting such a proposition. Such statements do not create a genuine dispute of fact. See Wai Man Tom v. Hosp. Ventures LLC, 980 F.3d 1027, 1037 (4th Cir. 2020) ("[C]onclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion."); (See Pl. Decl. [D.E. 60] ¶ 3). In fact, defendants' undisputed evidence demonstrates plaintiff is in fact subject to the same NCDPS policies and procedures as other inmates. (See Def. Ex. 1, C [D.E. 58-4] at 4).

Plaintiff also argues Raynor was not impartial arbiter because plaintiff did not consent to Raynor being appointed as the DHO. (Pl. Mem. [D.E. 60] at 1–2). The administrative record does not reflect any evidence of bias against plaintiff. (See Def. Ex. 2, A [D.E. 58-7]; Def. Ex. 3 [D.E. 58-9] ¶¶ 2–5). As stated above, plaintiff has not provided verified evidence that his consent is required prior to his engagement in prison disciplinary procedures. Plaintiff does not have a constitutional right to choose certain DHOs. See Wolff, 418 U.S. at 563–64. Further, the NCDPS policies and procedures do not provide for plaintiff's consent when a DHO is appointed. (See Def. Ex. 1, D [D.E. 58-5] § .0205(i)). DHOs are instead appointed by the Prisons Director. (Id.).

To the extent plaintiff is attempting to bring a substantive due process claim, such a claim requires evidence showing the denial of visitation and canteen privileges, as well as being confined

7

to restrictive housing, "was, under the circumstances, so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." Hawkins v. Freeman, 195 F.3d 732, 741 (4th Cir. 1999) (quoting County of Sacramento v. Lewis, 523 U.S. 833, 847 n.8 (1998)). Plaintiff has not provided any evidence supporting a substantive due process claim under this standard, particularly in light of the undisputed fact that defendant disobeyed prison staff orders. See Desper v. Clarke, 1 F.4th 236, 248 (4th Cir. 2021).

Further, plaintiff contends defendants' evidence contradicts itself regarding whether plaintiff interrupted Raynor during the hearing and whether plaintiff pleaded not guilty or entered a no plea. (Pl. Mem. [D.E. 60] at 2–5). Plaintiff maintains he entered a no plea. (Pl. Decl. [D.E. 60-3] ¶ 3). Assuming the veracity of plaintiff's arguments, the court finds such facts are not material. As stated, plaintiff does not dispute that the proper disciplinary procedures were followed nor the sufficiency of the evidence. Moreover, the undisputed evidence demonstrates that, upon entry of a no plea, a disciplinary hearing may still occur. (Def. Ex. 1, D [D.E. 58-5] § .0205(c)(2); Def. Ex. 3 [D.E. 58-9] ¶ 4). Thus, whether plaintiff entered a not guilty plea or a no plea, the hearing would have proceeded.

To the extent plaintiff seeks to make an equal protection claim, plaintiff does not allege he was treated differently from similarly situated inmates or pretrial detainees. See Morrison v. Garraghy, 239 F.3d 648, 654 (4th Cir. 2001) ("To proceed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination.").

Plaintiff maintains Raynor acting as DHO violated the separation of powers where Raynor is employed within the executive branch. Although unclear, it appears plaintiff asserts disciplinary hearings are required to be conducted by officials within the judicial branch of the United States government. Plaintiff's argument lacks merit where prison officials are allowed to discipline pretrial detainees for infractions. See Williamson, 912 F.3d at 175; Mitchell v. Dupnik, 75 F.3d 517, 524 (9th Cir. 1996) (providing jail officials may discipline pretrial detainees to "preserv[e] internal order and discipline") (internal quotation marks omitted).

Lastly, to the extent plaintiff claims he had a right to trial by jury, no such right exists for infractions committed by pretrial detainees. See Wolff, 418 U.S. at 563–64.

## CONCLUSION

For the reasons discussed herein, the court GRANTS defendants' motion for summary judgment [D.E. 55]. The clerk is DIRECTED to close this case.

SO ORDERED, this the 12th day of March, 2024.

RICHARD E. MYERS, II
Chief United States District Judge

9